IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JAMES WRIGHT,                                                               PLAINTIFF

v.                                 4:21CV00536-BSM-JTK

TRENT SMITH, et al.                                                      DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. Any party may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**DISPOSITION**

I.  **Plaintiff's Complaint and Procedural History**

James Wright ("Plaintiff") was incarcerated at the Varner Supermax Unit of the Arkansas Division of Correction ("ADC") when he commenced this lawsuit. (Doc. No. 5 at 3). Plaintiff has since been released on parole. (Doc. No. 37).

Plaintiff filed this pro se action pursuant to 42 U.S.C. § 1983 against multiple ADC officials in their personal and official capacities alleging violations of his constitutional rights. (Doc. Nos. 2, 5). Only Plaintiff's excessive force claim against Defendant Trent Smith remains pending. (Doc. Nos. 5, 6, 8).

Plaintiff claims that on December 3, 2020, Defendant Smith "repeatedly slammed [Plaintiff's] arm and wrist in the trap at [his] cell (650)" and twisted and bent Plaintiff's arm. (Doc. No. 5 at 4). Plaintiff's arm was "swollen, [and] bleeding from scrapes on the trap." (Id.). Plaintiff stated that "[a]t no time was [he] attempting assault or threatening, yet this officer assaulted [him] in retaliation of an ongoing altercation between [Plaintiff] and Cpl. Smith." (Id.). Plaintiff seeks $20,000 in damages. (Id. at 5).

Defendant Smith "was properly serv[ed] in this case on November 4, 2021" at an address for Defendant Smith that is maintained under seal. (Doc. No. 21 at ¶ 2) (See also Doc. No. 11, Process Receipt and Return).

On December 15, 2021, the Court entered a show cause order directing Defendant Smith to demonstrate why default should not be entered against him. (Doc. No. 12). Defendant Smith's response was due within 21 days, or by January 5, 2022. (Id.). A copy of the Order was mailed to the address under seal at which Defendant Smith was served.

Plaintiff filed his two pending Motions for Default Judgment on December 28, 2021 and January 3, 2022, respectively. (Doc. Nos. 13, 14).

On January 6, 2022, the Court mailed Defendant Smith copies of Plaintiff's Motions and the Show Cause Order, directing Defendant Smith to respond within 21 days. (Doc. No. 15). A copy of the January 6, 2022 Order was sent to Defendant Smith at the address maintained under seal.

On January 31, 2022, with no response from Defendant Smith, the Court directed the Clerk to enter default against Defendant Smith; the Clerk's default was entered that same day. (Doc. Nos. 18, 19). On that same day, the Court directed Defendant Smith be personally served with

2

Plaintiff's Amended Complaint, the Show Cause Order, and Plaintiff's Motions for Default Judgment.  (Doc. No. 18).

On March 4, 2022, Andrew Middlebrooks entered an appearance on behalf of Defendant Smith, moved to set aside the Clerk's default, and sought leave to file an answer out of time. (Doc. Nos. 20, 21).  Counsel explained that at the time Plaintiff filed this lawsuit, Defendant Smith was not employed with the Arkansas Department of Correction ("ADC"), but resumed employment with the ADC on January 27, 2022.  (Doc. No. 21 at ¶ 5).

The Court asked Defendant Smith for further explanation as to what happened between November 4, 2021, when Defendant Smith was served, and March 4, 2022, the date on which Defendant Smith, through counsel, asked to have the default set aside.  (Doc. No. 22).

Defendant Smith filed a supplement on March 28, 2022.  (Doc. No. 26).  He explained that the address at which he had been served was his mother's address, but his "mother did not make him aware of the summons and complaint."  (Id. at 1).  Defendant Smith says he became aware of the lawsuit in early January 2022 when he received the show cause Order (DE 15).  (Id. at 2).  Defendant Smith "was unsure what to do with the order and as a result, regrettably, he did nothing."  (Id.).  Defendant Smith also said that he "previously, mistakenly, indicated that he was properly served.  (DE 21)."  (Id. at 2, n 1).  Defendant Smith then asserted that "[t]his service was not proper."  (Id.).

On April 4, 2022, the Court denied Defendant Smith's Motion to Set Aside Default. (Doc. No. 27).  The Court found that Defendant Smith had not established good cause to set aside the default, in part because Defendant Smith "shunned [his] responsibility, choosing to ignore the Court's Order."  (Id. at 3).  The Court noted that "[b]y Defendant Smith's own admission, this was not an inadvertent oversight, but a decision not to act[], to do nothing."  (Id.).

3

Defendant Smith then filed a Motion for Relief from Judgment (Doc. No. 30), which the Court denied as moot because no judgment had been entered (Doc. No. 32).

On June 23, 2022, a default judgment hearing was scheduled for August 10, 2022. (Doc. No. 33). Plaintiff was released on parole on or around July 15, 2022. (Doc. No. 37). After Plaintiff encountered transportation issues on August 10, 2022, the Court rescheduled the default judgment hearing for August 15, 2022. (Doc. No. 40). The default judgment hearing was held as scheduled on August 15, 2022. (Doc. No. 41).

**II.     Discussion**

Considering the pleadings and evidence, the Court makes the following Recommendations.

**A.     Official Capacity Claims**

Plaintiff sued Defendant Smith in his personal and official capacities seeking damages only. "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010). Accordingly, Plaintiff's official capacity damages claims against Defendant Smith are the equivalent of claims against the state of Arkansas and are barred by Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Accordingly, the Court recommends Plaintiff's official capacity claims against Defendant Smith be dismissed without prejudice for failure to state a claim on which relief may be granted.

**B.     Setting Aside of Default**

During the August 15 hearing, Defendant Smith argued to have the default entered against him set aside. Relief from a default order requires less of a showing of excuse than relief from a default judgment. Johnson v. Dayton Elec. Mfg. Co., 140 F.3d 781, 783-84 (8th Cir. 1998). The Court of Appeals for the Eighth Circuit noted that "[t]his is a sound distinction. There is a

4

'judicial preference for adjudication on the merits.'" Id. at 784 (internal citation omitted). The Eighth Circuit Court of Appeals further noted that "it is likely that a party who promptly attacks an entry of default, rather than waiting for a grant of default judgment, was guilty of an oversight and wishes to defend the case on the merits." Id. at 784. In such circumstances, the party moving to set aside an entry of default "is entitled to the more lenient 'good cause' standard . . . ." Id.

Defendant Smith acknowledged that he "was properly serv[ed] in this case on November 4, 2021" at an address for Defendant Smith that is maintained under seal. (Doc. No. 21 at ¶ 2) (See also Doc. No. 11, Process Receipt and Return). Approximately three weeks later, Defendant Smith reversed his position and asserted that he "previously, mistakenly, indicated he was properly served . . [but] [t]his service was not proper." (Doc. No. 26 at 2, n.1).

At the August 15, 2022 hearing, Defendant Smith argued that he did not live at the address at which he was served, which was his mother's address, at the relevant times. Defendant Smith presented one witness whose brief testimony represented that Defendant Smith lived with the witness in January 2022. Defendant Smith further testified that his mother only made him aware of the lawsuit after the United States Marshal's Service appeared at her house. The Court does not credit this testimony.

Also at the August 15 hearing, Defendant Smith said he became aware of the lawsuit during the first half of January, 2022. This is consistent with Defendant Smith's earlier filings. In Defendant Smith's Brief in Support of Motion to File Belated Answer, Defendant Smith explained that he "was not actually aware of the lawsuit until the beginning of January when he received the show cause order. (DE 15)." (Doc. No. 26). The Court notes that the show cause order and summons both were sent to the same address. The Court also notes that it ordered personal service

5

only on January 31, 2022, so Defendant Smith could not have learned of the lawsuit only after that date.

Defendant Smith filed a Motion to Set Aside Default and proposed Answer on March 4, 2022—approximately two months after receiving the show cause Order, despite specific instructions in the Order to respond within 21 days.

According to Defendant Smith, his delay in this case was caused in part by him not receiving the Complaint when it was first served at his mother's house and in part by him simply "doing nothing." (Id. at 1-2). He says he was confused, as he had been sued before while working for the ADC; service in those cases was made via the ADC compliance department and sent to the Attorney General's Office for representation. (Id. at 3-4). Defendant Smith also argues that he was unrepresented at the time. (See Id. at 3-4). But, "[a] litigant, even a pro se one, bears some responsibility for advocating for himself." In Re Heyl, 609 B.R. 194, at *15 (8th Cir. 2019) (internal citations omitted).

Despite having received the show cause Order (Doc. No. 15) in early January, Defendant Smith shunned his responsibility and chose to ignore the Court's Order. Defendant Smith even admitted to the Court that he "was unsure what to do with the order and as a result, regrettably, he did nothing." (Doc. No. 26 at 2). The Court notes that Defendant Smith, in his Motion for Relief from Judgment said that he "would not have just ignored" this lawsuit had he known about it before January 2022. (Doc. No. 30-1 at ¶ 12). This second contradictory statement—the first being that he was not properly served after saying he was—did little to boost Defendant Smith's credibility in the eyes of the Court.

"Pro se litigants are not excused from compliance with substantive and procedural law." Brown v. Frey, 806 F.2d 801, 804 (8th Cir. 1986). Defendant Smith's choice to do nothing

6

constituted "contumacious or intentional delay or disregard for deadlines and procedural rules." Johnson v. Dayton Elec. Mfg. Co., 140 F.3d 781, 784 (8th Cir. 1998). The Court is aware that "default judgment is not favored by the law." (Doc. No. 26 at 3) (citing United States v. Harre, 983 F.2d 128, 130 (8th Cir. 1993)). But Defendant Smith's blameworthy and culpable conduct does not warrant setting aside the entry of default. Accordingly, the Court recommends that the entry of default against Defendant Smith in his personal capacity be allowed to stand.

### C. Default Judgment and Damages

Even when a Defendant is in default and the Clerk has entered default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, the Court has broad discretion in determining the circumstances under which a default judgment should enter. Swink v. City of Pagedale, 810 F.2d 791, 792 (8th Cir. 1987). "This element of discretion makes it clear that the party making the request is not entitled to a default judgment as of right, even when defendant is technically in default and that fact has been noted under Rule 55(a)." WRIGHT & MILLER, 10A Federal Practice & Procedure §2685 (3d ed. 1998).

"When a default judgment is entered on a claim for an indefinite or uncertain amount of damages, facts alleged in the complaint are taken as true, except facts relating to the amount of damages, which must be proved in a supplemental hearing or proceeding." Everyday Learning Corp. v. Larson, 242 F.3d 815, 818 (8th Cir. 2001). (See also FED. R. CIV. P. 8(b)(6) "[a]n allegation – other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Nonetheless, "it remains for the [district] court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Marshall v. Baggett, 616 F.3d 849, 852 (8th Cir. 2010) (citing, among others, Ohio Cent. R. Co. v. Central Trust Co., 133 U.S. 83, 91 (1890)

7

("[A]lthough the defendant may not be allowed, on appeal, to question the want of testimony or the insufficiency or amount of the evidence, he is not precluded from contesting the sufficiency of the bill, or from insisting that the averments contained in it do not justify the decree.")). "If the elements of the claim are established by the complaint's factual allegations, the defendant's default establishes its liability." Plaza Motors of Brooklyn, Inc. v. Rivera, No. 19-CV-6336 (LDH), 2020 WL 9814102, at *4 (E.D.N.Y. Sept. 17, 2020) (citing Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 69 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973)).

Plaintiff alleged Defendant Smith used excessive force against him. "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Jackson v. Gutzmer, 866 F.3d 969, 974 (8th Cir. 2017) (internal citation omitted). The core judicial inquiry is whether the force was used in a "good-faith effort to maintain or restore discipline, or was instead used maliciously and sadistically to cause harm." Flemons v. Devane, 779 Fed. Appx. 423, 425 (8th Cir. 2019) (per curiam) (citing Wilkins v. Gaddy, 559 U.S. 34, 36-39 (2010)). In making this inquiry, courts consider: "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of the injury inflicted . . . ." Jackson, 866 F.3d at 974. Pain inflicted during a prison security measure is not cruel and unusual punishment only because in hindsight the degree of force used for security purposes was unreasonable. Ward v. Smith, 844 F.3d 717, 721 (8th Cir. 2016). Rather, guards will liable only "if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically.'" Id. (internal citation omitted). "Whether the force used was reasonable is 'judged from the perspective of a reasonable officer on the scene' and in the light of the particular circumstances." Story v. Norwood, 659 F.3d 680, 686 (8th Cir. 2011) (quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989)).

And it is the plaintiff's burden to establish damages to a "reasonable degree of certainty." Everyday Learning Corp., 242 F.3d at 819. It is not appropriate to award damages when the amount sought is "speculative and not proven by a fair preponderance of the evidence." Id. at 818. To recover more than nominal damages, a plaintiff must show more than mental or emotional injury. McAdoo v. Martin, 899 F.3d 521, 525 (8th Cir. 2018). Further, physical injury must be more than de minis. Id.

There is no set definition of "de minimis"; whether an injury is sufficiently serious to be considered greater than de minimis is claim dependent. Irving v. Dormire, 519 F.3d 441, 448 (8th Cir. 2008). An award of zero damages is possible when judgment is based on default. Everyday Learning Corp., 242 F.3d at 818-19 (affirming award of zero damages on default judgment); Green v. Poorman, No. CV 20-85-SRF, 2022 WL 2527080, at *5 (D. Del. July 7, 2022) (recommending default judgment of zero dollars); Dickson v. United Fam. Med. Ctr., Inc., 860 F. App'x 705, 706–07 (11th Cir. 2021) (damages on default judgment "only if the record adequately reflects the basis for award *via a hearing* or a demonstration by detailed affidavits establishing the necessary facts.")(internal citation omitted); Elps v. Armstrong, No. 5:10CV00302-JLH-BD, 2011 WL 3297207, at *1 (E.D. Ark. June 13, 2011) (recommending zero damages on default judgment), report and recommendation adopted, No. 5:10CV00302 JLH-BD, 2011 WL 3290331 (E.D. Ark. Aug. 1, 2011); Rhodes v. Robinson, 399 F. App'x 160, 166 (9th Cir. 2010) (affirming award of zero damages on default judgment);

As noted earlier, Plaintiff requested $20,000 in damages. (Doc. No. 5 at 5). As background, Plaintiff was issued a disciplinary in connection with events on December 3, 2020. The disciplinary provided, in relevant part:

> On December 3, 2020 at approximately 2:15 PM I Corporal Trent Smith was conducting a security round in cell block 6 Zone 4 when I observed Inmate James

> Wright ADC # 142769 trap was open. I Corporal Smith gave Inmate Wright a direct verbal order to allow me to close his trap. Inmate Wright stated that 'I'm not letting you close this trap and put his arm in the trap blocking the locking device. I Corporal Smith then radioed VSM for assistance in closing Inmate Wright's trap. Sergeant Higgins and Sergeant Taylor came to assist in securing the trap. I Corporal Smith then removed myself from the trap because Inmate Wright was claiming that I hurt his hand by attempting to close the trap. Lieutenant Lloyd was also in the area and approached Inmate Wright cell to assist. Lieutenant Lloyd closed Inmate Wright's trap. Inmate Wright was seen by Medical. Photos were also taken of his hand and arm. Inmate Wright is aware that his actions are against ADC rules and regulations.

(Doc. No. 30-2 at 1).

In connection with this incident—the same incident in which Plaintiff claims Defendant Smith used excessive force—Plaintiff was found guilty of failure to obey order of staff, keep person/quarters within regulations, and tampering with or blocking lock. (Id. at 2). An internal affairs investigation was conducted, and Defendant Smith was exonerated. (Def.'s Exhibit 4, Aug. 15, 2022 Default Judgment Hearing).

Plaintiff was seen by medical on December 3, 2020 for pain in his right arm. (Def.'s Exhibit 2, Aug. 15, 2022 Default Judgment Hearing). The condensed health services encounter reflects that Plaintiff complained "Dude shut my arm in the trap." (Id. at 1). The condensed health services encounter also reflects:

> Called to VSM to check on pt after his arm was shut in the trap. Pt. has a small abrasion to right arm. No bleeding noted. Slight redness. No swelling noted. No deformities seen. Pt. stated his arm hurt. Pt. was given a band aid and some TAO.

(Id.).

While the photographs in evidence are not of very high quality, no bruising, abrasion, or swelling can be seen. (Def.'s Exhibit 1, Aug. 15, 2022 Default Judgment Hearing). Plaintiff testified that his arm, near the elbow, was scratched and bleeding after Defendant Smith closed Plaintiff's arm in the trap. The photographs and December 3, 2020 condensed health services

10

encounter show otherwise. Plaintiff also testified that his arm was sprained. Again, medical records do not show that Plaintiff's arm was sprained. On December 9, 2020 Plaintiff had full range of motion in his arm, and at most mild swelling. (Doc. No. 34 at 14). Plaintiff was prescribed only acetaminophen. (Def.'s Exhibit 2, Aug. 15, 2022 Default Judgment Hearing; Doc. No. 34). Nothing in the record shows that Plaintiff ever sought treatment for his arm in the ADC after December 9, 2020. Further, Plaintiff testified at the August 15 hearing that he had not sought medical treatment after being released on parole. At the August 15 hearing, Plaintiff did testify that he still had issues with his arm, such as his arm being stiff in the morning. But Plaintiff offered no additional evidence demonstrating that any stiffness was the result of Defendant Smith's actions on December 3, 2020. Plaintiff also testified that injuries such as sprains could lead to problems, including arthritis, in the future.

Even accepting as true the allegations in Plaintiff's Amended Complaint, Everyday Learning Corp, 242 F.3d at 818, Plaintiff did not meet his burden to establish by a preponderance of the evidence that his injury entitled him to more than nominal damages. As such, the Court recommends default judgment be entered against Defendant Smith in the amount of $1.00.

### III.  CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1.   Plaintiff's claims against Defendant Smith in his official capacity be DISMISSED without prejudice for failure to state a claim on which relief may be granted.

2.   The Clerk's Default against Defendant Smith be allowed to stand.

3.   Plaintiff's Motions for Default Judgment (Doc. Nos. 13, 14) be GRANTED as to Defendant Smith in his personal capacity.

4.   Default judgment be entered against Defendant Smith in the amount of $1.00 dollar.

IT IS SO RECOMMENDED this 16th day of August, 2022.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE