**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

JAMES WRIGHT,                                                                    PLAINTIFF

v.                                              4:21CV00536-BSM-JTK

TRENT SMITH, et al.                                                          DEFENDANTS


**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller.    Any party may file written objections to all or part of this Recommendation.    If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation.    By not objecting, you may waive the right to appeal questions of fact.


**DISPOSITION**

**I.      Introduction**

James Wright ("Plaintiff") was incarcerated at the Varner Supermax Unit of the Arkansas Division of Correction ("ADC") when he commenced this lawsuit.    (Doc. No. 5 at 3).    Plaintiff has since been released on parole.    (Doc. No. 37).

In his Complaint, Plaintiff claimed that on December 3, 2020, Defendant Smith "repeatedly slammed [Plaintiff's] arm and wrist in the trap at [his] cell (650)" and twisted and bent Plaintiff's

arm.[1]  (Doc. No. 5 at 4).   Plaintiff's arm was "swollen, [and] bleeding from scrapes on the trap."
(Id.).   Plaintiff seeks damages in the amount of $20,000.   (Id. at 5).

Defendant Smith "was properly serv[ed] in this case on November 4, 2021," but did not
file a timely answer.   (Doc. No. 21 at ¶ 2) (See also Doc. No. 11, Process Receipt and Return).

Plaintiff filed two Motions for Default Judgment.   (Doc. Nos. 13, 14).   Defendant Smith
sought to file his Answer late, but the Court denied Defendant Smith's requests.   (Doc. Nos. 27,
32).   The Court held Plaintiff's Motions for Default Judgment in abeyance pending a default
judgment hearing.   The Court noted "that the issue of damages will be considered if and after
default is entered against Defendant Smith, at the default judgment stage." Doc. No. 17) (See also

---

[1] As background, Plaintiff was issued a disciplinary in connection with events on
December 3, 2020.   The disciplinary provided, in relevant part:

> On December 3, 2020 at approximately 2:15 PM I Corporal Trent Smith was
> conducting a security round in cell block 6 Zone 4 when I observed Inmate James
> Wright ADC # 142769 trap was open.   I Corporal Smith gave Inmate Wright a
> direct verbal order to allow me to close his trap.   Inmate Wright stated that 'I'm
> not letting you close this trap and put his arm in the trap blocking the locking device.
> I Corporal Smith then radioed VSM for assistance in closing Inmate Wright's trap.
> Sergeant Higgins and Sergeant Taylor came to assist in securing the trap.   I
> Corporal Smith then removed myself from the trap because Inmate Wright was
> claiming that I hurt his hand by attempting to close the trap.   Lieutenant Lloyd was
> also in the area and approached Inmate Wright cell to assist.   Lieutenant Lloyd
> closed Inmate Wright's trap.   Inmate Wright was seen by Medical. Photos were
> also taken of his hand and arm.   Inmate Wright is aware that his actions are against
> ADC rules and regulations.

(Doc. No. 30-2 at 1).

In connection with this incident—the same incident in which Plaintiff claims Defendant
Smith used excessive force—Plaintiff was found guilty of failure to obey order of staff, keep
person/quarters within regulations, and tampering with or blocking lock.   (Id. at 2).   An internal
affairs investigation was conducted, and Defendant Smith was exonerated.   (Def.'s Exhibit 4,
Aug. 15, 2022 Default Judgment Hearing).

Doc. No. 18) (another attempt at serving Defendant Smith "as a final step before setting a default judgment hearing.").

The Court held the default judgment hearing August 15, 2022.   (Doc. Nos. 40, 41).   On August 16, 2022, the Court recommended that the Clerk's entry of default be allowed to stand, Plaintiff's Motions for Default Judgment be granted, and judgment be entered in Plaintiff's favor in the nominal amount of $1.00.   (Doc. No. 42).

On September 6, 2022, United States District Judge Brian S. Miller adopted the Recommendation as to the default judgment, but declined the Recommendation as to the $1.00 damages award.  (Doc. No. 43).   Judge Miller remanded the case to the undersigned "to hold a damages hearing or explain that a damages hearing would be futile because [Plaintiff] had already been given an opportunity to prove his damages."   (Id.).

II.    **Discussion**

A.    **Plaintiff Was Given A Full Opportunity to Prove His Damages**

Holding a further damages hearing would be futile because Plaintiff was given a full opportunity to prove his damages.

The Court held Plaintiff's Motions for Default Judgment in abeyance pending a default judgment hearing.   Plaintiff was aware that damages would be considered at the default judgment stage.  (Doc. No. 17 ) ("The Court notes that the issue of damages will be considered if and after default is entered against Defendant Smith, at the default judgment stage.").   After default was entered against Defendant Smith, the Court informed the parties that a purpose of the default judgment hearing is to "determine the amount of damages," among other things.   (Doc. No. 32 at 2).   The Court also informed the parties that at the hearing they would be allowed to "raise any issues they find relevant to Plaintiff's pending motions."   (Id.).   The Court further explained that

after the hearing, a recommendation would be made as whether default judgment should be entered, and the amount of damages, if any.   (Id.)

Before the hearing, in response to Defendant Smith's Motion for Relief from Judgment, Plaintiff again asserted that he was assaulted and injured by Defendant Smith, and Plaintiff submitted medical records in support of his claim.  (Doc. No. 34).  According to Plaintiff, the evidence he provided demonstrated that Plaintiff was entitled to relief, and Plaintiff asked the Court "for a hearing at the earliest date."   (Id. at 4-5).   The same day Plaintiff filed his Response to Defendant Smith's Motion for Relief from Judgment, the Court scheduled the default judgment hearing for August 10, 2022.  (Doc. No. 35).   Because Plaintiff had problems with transportation to the Courthouse on August 10, 2022, the Court rescheduled the hearing for August 15, 2022. (Doc. No. 40).

As the August 15, 2022 hearing began, the Court allowed Defendant Smith to call a witness to testify about Defendant Smith's residence at the time he was served.   (Doc. No. 45 at 4:6-6:11). The testimony was brief and the issue was taken under advisement.

The Court then moved "to the other purpose for this to determine, what damages, if any were caused by or involved in this lawsuit."   (Id. at 6:16-6:19).   The Court said to Plaintiff: "I want you to just – first of all, just tell the Court what happened here in terms of – and specifically I want to know what damages were done."   (Id. at 6:20-22).

**B.    Plaintiff's Testimony**

Plaintiff recounted Defendant Smith's actions during the incident at issue.   (Id. at 7:7-9:9). According to Plaintiff, Plaintiff's trap was open and his arm was outside; he was trying to pull in his laundry bag.   (Id. at 7:12-7:14).   Defendant Smith then ran over and grabbed Plaintiff's arm. (Id. at 7:14-7:15).   Plaintiff testified that he and Defendant Smith were wrestling, and that

4

Defendant Smith "pulled [Plaintiff], twisted [Plaintiff's] arm." (Doc. No. 45 at 7:15-7:17). Plaintiff said he yelled out for other nearby officers to come, but they ignored Plaintiff. (Id. at 7:17-7:22). The officers eventually came, separated Plaintiff and Defendant Smith, and called a nurse. (Id. at 7:22-7:25). Plaintiff testified that his

> arm wasn't broken or whatever, but a lot of the skin was scraped, which I sent in records from medical. It was scraped up and swollen. He almost broke my arm. He was twisting and bending it . . . he almost broke my arm.

(Id. at 7:23-8:6).

The Court then asked Plaintiff, "[s]o the twisting of your arm was your primary complaint?" (Id. at 8:7-8). Plaintiff responded: "Yes, sir. It was scraped up and kind of bleeding and stuff, yes, sir." (Id. at 8:7-8:10; 11:9-12:12).

When defense counsel began his cross examination of Plaintiff, counsel asked the Court: "Am I just asking about damages, is that all we're covering right now?" (Doc. No. 45 at 9:1-9:2). The Court responded: "Yeah, we're trying to get to the damages, but you can address the things that he brought up during his statement." (Id. at 9:3-9:5).

During cross examination, defense counsel asked Plaintiff how Plaintiff's arm got scraped from rubbing the trap. (Id. at 12:3-4). Plaintiff responded:

> He was pulling me. Like this is the trap. You see my arm is in there? He grabbed my arm and just pulling it. My arm was steady scratching up against the top of the door and I'm steady trying to pull away from him and he was twisting me. It's all on camera. He just kept pulling and scratched up against this door here and that's how my elbow got scratched up or whatever.

(Id. at 12:5-12:11) (Plaintiff was demonstrating his arm in the trap as depicted in a photograph introduced as Defendant's Exhibit 1).

Plaintiff testified that he still has "a lot of aches and different things like that" and that "[y]ou can still kind of see a little scar or whatever's that's there." (Id. at 9:22-9:24).

Additionally, Plaintiff testified that his arm "pops and [he] [has] to really work with it to stretch it out or whatever," but Plaintiff's hand is fine.  (Id. at 9:25-10:1; 10:5-10:10).  Plaintiff testified that "like joint injuries, like, later in life it could be arthritis or something."  (Doc. No. 45 at 12:17-12:18).  During the hearing, Plaintiff continuously relied on the December 9, 2022 encounter notes he attached to his Response to Defendant Smith's Motion for Relief from Judgment.  (Id. at 14:4-15:14; 17:20-18:10).

When Plaintiff was asked if he paid any medical bills in connection with his arm, Plaintiff responded:  "I don't have to pay bills.   I've been in prison, so they give you proper medical care in prison."  (Id. at 9:10-11).   Plaintiff further testified that from the time he has been out of prison, he has not been to see a doctor about his arm.  (Id. at 9:12-18).  According to Plaintiff, he had not gone to the doctor "yet because [he has] only been out a couple [of] weeks . . . the prison give[s] you insurance and it doesn't become effective until 9/1 . . . ."  (Id. at 9:14-18).   Plaintiff testified that he had no medical bills in connection with his arm.  (Id. at 9:8-9:18).

Plaintiff was asked if he was "saying that the medical treatment that [he] got [in prison] was subpar or resulted in any kind of problems."  (Doc. No. 45 at 9:19-9:21).   Plaintiff acknowledged that the medical treatment he received in prison was adequate.  (Id. at 9:19-9:21).

### C.    Additional Evidence Offered

Plaintiff submitted medical records to demonstrate that Defendant Smith assaulted him and "caused injury no matter how small the state feels it was."  (Doc. No. 34 at 4; Doc. No. 45 at 14:4-15:14; 17:20-18:10).   Plaintiff's evidence included a health services request form dated December 5, 2020 and notes from a December 9, 2020 health services encounter.  (Doc. No. 34 at 13-16).  In the health services request, Plaintiff described the problem as his right arm being "swollen and bruised from being slammed and twisted by Clp. Smith."  (Id. at 13).   The request was triaged on

6

December 7, 2020 with an assessment of "mild swelling ® arm." (Id.).   In the December 9, 2020

encounter notes, Plaintiff complained that his "right arm is swollen and bruised from being twisted

and slammed by security.   I have a spot on my head that the hair is falling out." (Id. at 14).   The

provider noted:

> IM standing. Gait steady.   Coordination and ROM [within normal limits].   NAD.
> Speech clear and appropriate.   Quarter sized area noted to L side scalp without hair
> growth.   No swelling or drainage noted.   Mild swelling noted to R forearm.   Full
> [range of motion].

(Id.).   The provider also observed localized tenderness, swelling, and pain with range of motion.

(Id.).   The provider prescribed a 30-day supply of 325 mg acetaminophen tablet with no refills.

(Doc. No. 34 at 14).   The provider also prescribed hydrocortisone cream.   (Id.).

During the hearing, Defendant Smith also introduced medical records.   (Def.'s Exhibit 2,

Aug. 15, 2022 Default Judgment Hearing).   The medical records offered by Defendant Smith

predate the records Plaintiff submitted.   Defendant Smith introduced notes from a December 3,

2020 health services encounter.   Plaintiff's main complaint was acute pain in his right arm.

(Def.'s Exhibit 2, Aug. 15, 2022 Default Judgment Hearing).   The condensed health services

encounter reflects that Plaintiff complained: "Dude shut my arm in the trap." (Id. at 1).   The

provider wrote:

> Called to VSM to check on pt after his arm was shut in the trap.   Pt. has a small
> abrasion to right arm.   No bleeding noted.   Slight redness.   No swelling noted.
> No deformities seen.   Pt. stated his arm hurt.   Pt. was given a band aid and some
> TAO.

(Id.).   The provider prescribed Tylenol.   (Id.)

Defendant Smith also offered into evidence photographs taken of Plaintiff's hand and

forearm shortly after the incident.   The photographs in evidence are of quite poor quality, but no

bruising, abrasion, or swelling can be seen.   (Def.'s Exhibit 1, Aug. 15, 2022 Default Judgment

Hearing).  Plaintiff testified that his arm, near the elbow, was bleeding lightly after Defendant Smith closed Plaintiff's arm in the trap.  (Doc. No. 45 at 8:9-8:12.)  The photographs and December 3, 2020 health services encounter notes show otherwise.  The skin on Plaintiff's arm was lightly scratched, but there was no blood.  Plaintiff acknowledged that the medical record "sounds like the right thing."  (Id. at 14:14-14:17).

Plaintiff countered Defendant Smith's evidence, referring the Court back to the December 9, 2020 health services encounter notes that he provided.  (Id. at 12:23-13:2).  Plaintiff offered no additional medical documents, and did not refer to any additional medical documents.

When defense counsel finished his cross examination of Plaintiff, the Court stated to Plaintiff: "[W]e've heard from you, unless you wanted to add something else."  (Id. at 18:23-18:24).  Plaintiff responded "No, sir."  (Id. at 18:25).

Defense counsel then called Defendant Smith to the stand.  As to Plaintiff's injury, Defendant Smith denied closing Plaintiff's arm in the trap.  (Id. at 25:16-26:28:7).  When Plaintiff questioned Defendant Smith, Plaintiff pointed out that the internal affairs investigation exonerated Defendant Smith—that "the allegations were true, but actions were within departmental policy."[2]  (Doc. No. 45 at 33:16-34:3).

Based on the evidence in the record, Plaintiff received medical care for his arm twice.  Plaintiff apparently did not seek medical treatment for his arm in the ADC after December 9, 2020.  Again, Plaintiff acknowledged that the medical treatment he received in prison was adequate.  (Id.

---

[2] The Court notes that the allegation in the internal affairs investigation was that Plaintiff's trap was open, Defendant Smith ordered Plaintiff to close the trap, after which Plaintiff put his arm in the trap and told Defendant Smith "I'm not letting you close this trap."  A statement by Sergeant Higgins reflects that Defendant Smith "tried to close Inmate Wright's trap when Inmate Wright stuck his arm in the trap blocking the locking device preventing Corporal Smith from closing the trap."  (Def.'s Exhibit 4, Aug. 15, 2022 Default Judgment Hearing).

at 9:19-9:21).   Further, Plaintiff testified at the August 15 hearing that he had not sought medical treatment after being released on parole.

### B.     Default Judgment and Damages

Even when a Defendant is in default and the Clerk has entered default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, the Court has broad discretion in determining the circumstances under which a default judgment should enter.   Swink v. City of Pagedale, 810 F.2d 791, 792 (8th Cir. 1987).   "This element of discretion makes it clear that the party making the request is not entitled to a default judgment as of right, even when defendant is technically in default and that fact has been noted under Rule 55(a)."   WRIGHT & MILLER, 10A Federal Practice & Procedure §2685 (4th ed.).

"When a default judgment is entered on a claim for an indefinite or uncertain amount of damages, facts alleged in the complaint are taken as true, except facts relating to the amount of damages, which must be proved in a supplemental hearing or proceeding." Everyday Learning Corp. v. Larson, 242 F.3d 815, 818 (8th Cir. 2001).   (See also FED. R. CIV. P. 8(b)(6) "[a]n allegation – other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").   Nonetheless, "it remains for the [district] court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."   Marshall v. Baggett, 616 F.3d 849, 852 (8th Cir. 2010) (citing, among others, Ohio Cent. R. Co. v. Central Trust Co., 133 U.S. 83, 91 (1890) ("[A]lthough the defendant may not be allowed, on appeal, to question the want of testimony or the insufficiency or amount of the evidence, he is not precluded from contesting the sufficiency of the bill, or from insisting that the averments contained in it do not justify the decree.")). "If the elements of the claim are established by the complaint's factual allegations, the defendant's default

establishes its liability." Plaza Motors of Brooklyn, Inc. v. Rivera, No. 19-CV-6336 (LDH), 2020

WL 9814102, at *4 (E.D.N.Y. Sept. 17, 2020) (citing Trans World Airlines, Inc. v. Hughes, 449

F.2d 51, 69 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973)).

      Plaintiff alleged Defendant Smith used excessive force against him.  "After incarceration,

only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment

forbidden by the Eighth Amendment." Jackson v. Gutzmer, 866 F.3d 969, 974 (8th Cir. 2017)

(internal citation omitted).  The core judicial inquiry is whether the force was used in a "good-

faith effort to maintain or restore discipline, or was instead used maliciously and sadistically to

cause harm." Flemons v. Devane, 779 Fed. Appx. 423, 425 (8th Cir. 2019) (per curiam) (citing

Wilkins v. Gaddy, 559 U.S. 34, 36-39 (2010)).  In making this inquiry, courts consider: "the need

for the application of force, the relationship between the need and the amount of force that was

used, and the extent of the injury inflicted . . . ." Jackson, 866 F.3d at 974.  Pain inflicted during

a prison security measure is not cruel and unusual punishment only because in hindsight the degree

of force used for security purposes was unreasonable. Ward v. Smith, 844 F.3d 717, 721 (8th Cir.

2016).  Rather, guards will liable only "if they are completely unjustified in using force, i.e., they

are using it maliciously and sadistically.'" Id.  (internal citation omitted).  "Whether the force

used was reasonable is 'judged from the perspective of a reasonable officer on the scene' and in

the light of the particular circumstances." Story v. Norwood, 659 F.3d 680, 686 (8th Cir. 2011)

(quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989)).

      It is the plaintiff's burden to establish damages to a "reasonable degree of certainty."

Everyday Learning Corp., 242 F.3d at 819.  It is not appropriate to award damages when the

amount sought is "speculative and not proven by a fair preponderance of the evidence." Id. at

818.  And to recover more than nominal damages under the Prison Litigation Reform Act, a

plaintiff must show more than mental or emotional injury. <u>McAdoo v. Martin</u>, 899 F.3d 521, 525 (8th Cir. 2018). Further, to recover more than nominal damages under the Prison Litigation Reform Act, physical injury must be more than de minimis. <u>Id</u>. See also 42 U.S.C. § 1997e(e) ("No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act."); <u>Royal v. Kautzky</u>, 375 F.3d 720, 723 (8th Cir. 2004) (PLRA's actual injury requirement does not bar award of nominal damages).

While cases in this Circuit have found certain injuries de minimis, there is no set definition of de minimis. <u>Bishop v. Glazier</u>, 723 F.3d 957, 962 (8th Cir. 2013) (light cut on neck that did not bleed and for which Plaintiff did not seek treatment de minimis); <u>Wertish v. Krueger</u>, 433 F.3d 1062, 1067 (8th Cir. 2006) ("relatively minor scrapes and bruises and the less-than-permanent aggravation of a prior shoulder condition" de minimis); <u>Andrews v. Fuoss</u>, 417 F.3d 813, 816, 818 (8th Cir. 2005) (severe headache and soreness de minimis); <u>Foster v. Metro. Airports Comm'n</u>, 914 F.2d 1076, 108182 (8th Cir. 1990) (handcuffs too tightly applied not excessive force without medical records showing long-term injury or other evidence of permanent injury); <u>Williams v. Mensey</u>, 785 F.2d 631, 639 (8th Cir. 1986) (jury award of nominal damages affirmed where plaintiff complained of recurring headaches, back pain, and blurred vision resulting from beating by prison guard and other inmates).

Perhaps insightful, while not binding, is the following description of de minimis injury:

A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care.... Injuries treatable at home and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of [42 U.S.C. § 1997e(e) ].

Rodriguez v. Page, No. 1:15CV00022 BSM/PSH, 2017 WL 3015876, at *5 (E.D. Ark. May 9, 2017), report and recommendation adopted, No. 1:15-CV-00022 BSM, 2017 WL 3015875 (E.D. Ark. July 14, 2017), aff'd, 749 F. App'x 482 (8th Cir. 2019).

Whether an injury is sufficiently serious to be considered greater than de minimis is claim dependent. Irving v. Dormire, 519 F.3d 441, 447-48 (8th Cir. 2008). Injuries involving documented sprains at times have been found to be greater than de minimis. Span v. City of Minneapolis, Civil No. 08–41, 2009 WL 803478, at *5 (D. Minn. Mar. 25, 2009) (sprain to the thumb and injuries to the neck, lower back, and left shoulder).

Plaintiff testified that his arm was sprained. (Doc. No. 45 at 9:22). But even the medical records Plaintiff submitted do not support that allegation. On December 9, 2020 Plaintiff had full range of motion in his right arm, and at most mild swelling and pain with motion. (Doc. No. 34 at 14). Plaintiff was prescribed acetaminophen, with no refills. Although Plaintiff remained in prison for roughly six months after the prescription expired, there is no evidence of further visits to the infirmary with requests for additional medication. Further, based on the photograph in Defendant's Exhibit 1, the scratched skin is on the top of Plaintiff's arm slightly lower than the elbow. This is consistent with Plaintiff's testimony that "[his] arm was steady scratching up against the top of the door and I'm steady trying to pull away from [Defendant Smith]." (Doc. No. 45 at 12:7-8). As Plaintiff's arm was "steady scratching up against the top of the door," and his arm was allegedly being twisted, scratches or some other minor damage to other sides of Plaintiff's arm—beyond the top—could be expected. But there are no scratches elsewhere on Plaintiff's arm to indicate twisting. The Court also notes that in his initial health services encounter, Plaintiff complained only that "[d]ude shut my arm in the trap." (Def.'s Exhibit 2, August 15, 2022 Default Judgment Hearing).

At the August 15 hearing, Plaintiff testified that he still had issues with his arm, such as aches and popping.   In his Objection to the earlier Recommendation, Plaintiff maintained that he "sustained [a] minor but lasting injury."   (Doc. No. 44 at 1).   And Plaintiff asserted that he "can verify through medical records that [he] was injured to [his] joint elbow and it was swollen and has pained [Plaintiff] ever since."   (Id.).   But Plaintiff offered no additional medical evidence demonstrating lasting injury.   Plaintiff also did not say there was additional medical evidence not in his possession.[3]

Plaintiff testified that he "submitted a lot of evidence . . . a lot of it was the health services thing where it said my arm was swollen or scraped up or whatever."   (Doc. No. 45 at 12:24-25:2). The Court described the December 9, 2020 health services encounter notes above.   Beyond that, the medical evidence Plaintiff submitted was for visits to the infirmary before the incident giving rise to this lawsuit.   (Doc. No. 34 at 15-16).

An award of zero damages is possible when judgment is based on default.   Everyday Learning Corp., 242 F.3d at 818-19 (affirming award of zero damages on default judgment); Green v. Poorman, No. CV 20-85-SRF, 2022 WL 2527080, at *5 (D. Del. July 7, 2022) (recommending default judgment of zero dollars); Dickson v. United Fam. Med. Ctr., Inc., 860 F. App'x 705, 706–07 (11th Cir. 2021) (damages on default judgment "only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts.") (internal citation omitted); Elps v. Armstrong, No. 5:10CV00302-JLH-BD, 2011 WL 3297207, at *1 (E.D. Ark. June 13, 2011) (recommending zero damages on default judgment), report and

---

[3] Plaintiff explained the procedure for receiving medical care, and explained he had seen Ms. Bland several times, though Plaintiff did not indicate the visits were in connection with the December 3 incident and the Court did not take Plaintiff's statement to mean such.   (Doc. No. 45 at 18:14-18:20).

recommendation adopted, No. 5:10CV00302 JLH-BD, 2011 WL 3290331 (E.D. Ark. Aug. 1, 2011); Rhodes v. Robinson, 399 F. App'x 160, 166 (9th Cir. 2010) (affirming award of zero damages on default judgment).

And an award of nominal damages is an available remedy in excessive force cases. Cummings v. Malone, 995 F. 2d 817, 822-23 (8th Cir. 1993) ("the award of nominal damages is not to compensate the abstract value of the right to be free from a constitutional violation. Rather, it serves to compensate for a degree of harm sufficient to establish cruel and unusual punishment, but insufficient to support a more substantial measure of damages with reasonable certainty.") (internal citations omitted); Foulk v. Charrier, 262 F.3d 687, 701 (8th Cir. 2002) ("it is possible for a use of force to be excessive and in violation of the Eighth Amendment, and yet result in injury having no or only nominal monetary value.") (internal citation omitted). The Court of Appeals for the Eighth Circuit has indicated that one dollar is the appropriate amount for nominal damages. Corpus v. Bennett, 430 F.3d 912, 916 (8th Cir. 2005) ("Finally, one dollar is recognized as an appropriate value for nominal damages.") (citing Risdal v. Halford, 209 F.3d 1071, 1073 (8th Cir. 2000). See also 8TH CIR. CIVIL JURY INSTR. 4.71 ("If you find in favor of the plaintiff . . . but you find that the plaintiff's damages have no monetary value, then you must return a verdict for the plaintiff in the nominal amount of $1.00.")

Plaintiff requested $20,000 in damages.   (Doc. No. 5 at 5).   The Court credits Plaintiff's testimony that Defendant Smith closed Plaintiff's arm in the trap, as indicated in the December 3, 2020 health services encounter notes and the internal affairs investigation.   Even accepting as true that Defendant Smith used excessive force, Plaintiff did not meet his burden to establish by a preponderance of the evidence that his injury entitled him to more than nominal damages. Injuries such as mild swelling and pain as demonstrated by Plaintiff—through the medical records

14

he submitted and his testimony—are the type that have been found de minimis.    Plaintiff did not support his allegation that his elbow was twisted and sprained.    And nothing in the record supports Plaintiff's allegations that any current popping or stiffness is attributable to the December 3, 2020 incident.    Accordingly, the Court recommends default judgment be entered against Defendant Smith in the amount of $1.00.

## III.    CONCLUSION

IT IS, THEREFORE, RECOMMENDED that judgment be entered against Defendant Smith in the amount of $1.00 dollar.

Dated this 23rd day of November, 2022.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE

15